IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

RUBIANE VALDEZ-BARELA, as
Personal Representative of
The Estate of JOSEPH BARELA,

    Plaintiff,

v.                                                                                      No. 15-cv-1109-MCA-KBM

CORRECTIONS CORPORATION
OF AMERICA, and CORIZON
HEALTH, INC.,

    DEFENDANTS.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on *Defendant Corrections Corporation of America's Motion to Dismiss* filed December 16, 2015. [Doc. 4] The Court has considered the parties' submissions, the record, the relevant law, and has otherwise been fully advised in the premises.

**FACTUAL BACKGROUND**

Plaintiff Rubiane Valdez-Barela, as personal representative of the Estate of Joseph Barela, filed the present lawsuit against Defendants Corrections Corporation of America and Corizon Health, Inc., seeking damages for alleged violations of federal and state law arising from Mr. Barela's suicide while he was incarcerated at the Torrance County Correctional Facility. [Doc. 1-1 p. 1, ¶ 11] By stipulation of dismissal Corizon Health Corporation was terminated as a party in January 2015. [Doc. 8]

As alleged in the *Complaint*, the circumstances that led to the present lawsuit are the following. Defendant Corrections Corporation of America operates the Torrance County Correctional Facility (the Facility) pursuant to a contract with the State of New Mexico. [Doc. 1-1 ¶ 7] Mr. Barela was an inmate of the Facility. [Doc. 1-1 ¶ 11]

On November 26, 2013, Mr. Barela, having refused a urine analysis drug screening, was to be housed in a segregation unit. [Doc. 1-1 ¶ 12] Prior to his placement in segregation, a registered nurse at the Facility conducted a pre-segregation health evaluation. [Doc. 1-1 ¶ 13] The nurse "failed to complete the [health-evaluation] form, and possibly the health evaluation, as the psychiatric section of the evaluation was left blank, noting only that [Mr. Barela] appeared 'disheveled.'" [Doc. 1-1 ¶ 13]

On or about December 1, 2013, someone (the *Complaint* does not say who) noticed that Mr. Barela was "acting strangely" and that he was "talking very softly into the window of [the] door, talking 'non-sense' and hallucinating[.]" [Doc. 1-1 ¶ 14] Someone reported Mr. Barela's strange behavior to the Facility's mental health staff (the *Complaint* does not specify who made or received the report). [Id.]

On or about December 2, 2013 at approximately 5:31 a.m. an unnamed correctional officer employed by Defendant saw Mr. Barela on his bunk. [Doc. 1-1 ¶ 16] At approximately 6:05 a.m. correctional officer Joshua Aragon found Mr. Barela hanging from a shredded bed sheet attached to a light fixture in his segregation cell. [Doc. 1-1 ¶ 17] Correctional officers were unable to resuscitate Mr. Barela. [Doc. 1-1 ¶ 18]

In an autopsy of Mr. Barela's body, the Office of the Medical Investigator (OMI) found a packet containing 23.5 grams of a black tar substance believed to be heroin and

five individually wrapped sublingual Suboxone films. [Doc. 1-1 ¶20] Additionally, the OMI's toxicology report indicated that Mr. Barela had ingested methamphetamine, amphetamine, heroin, diazepam, and Suboxone. [Doc. 1-1 ¶ 21]

The *Complaint* also contains the following allegation:

> [Mr.] Barela's death was a direct and proximate result of the failure of the Defendants and their employees, official and/or agents to comply with standards, policies and procedures regarding the treatment and care of a person with Mr. Barela's observed irrational behavior and failure to screen for suicidal ideation and need for acute psychiatric care and suicide prevention treatment and for failure to detect and intercept drugs going into the prison facility and in the possession of inmates. Had Defendants provided the appropriate facility, psychiatric treatment, conditions of confinement and mental health care and complied with existing standards, policies and procedures regarding the protection of inmates from trafficking of drugs into the [Facility] and the treatment of a person with [Mr.] Barela's medical and mental health needs, there is a reasonable probability that [he] would have survived his period of incarceration and led a normal, enjoyable, productive life.

[Doc. 1-1 ¶ 23]

Based on the foregoing allegations, Plaintiff alleges that Defendant violated the rights guaranteed to Mr. Barela by the Eighth and Fourteenth Amendments[1] insofar as Defendant: (1) provided inadequate medical and psychiatric care; (2) acted inadequately to prevent drug trafficking and use; and (3) exposed him to a substantial risk of suicide. [Doc. 1-1 p. 6-11] These claims are brought pursuant to 42 U.S.C. § 1983. [Id.] Additionally, the *Complaint* includes a claim titled "State Law Negligence Per Se New

---

[1] Mr. Barela was apparently a pretrial detainee. As such, his claims are governed by the Eighth and Fourteenth Amendments. *See Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir. 1998 ("Although the Due Process Clause governs a pretrial detainee's claim of unconstitutional conditions of confinement, the Eighth Amendment standard provides the benchmark for such claims." (citation omitted)).

Mexico Constitution and NM Wrongful Death Act," and a claim titled "Punitive Damages." [Doc. 1-1 p. 12-13]

Defendant seeks dismissal of Plaintiff's *Complaint* on the grounds that: it is "extremely vague and lacks the facts sufficient to state a claim under any" stated theory of relief; and it "inappropriately brings claims pursuant 42 U.S.C. § 1983" for actions taken under color of federal law. [Doc. 4 p. 1, 4] Before considering the sufficiency of Plaintiff's factual allegations, the Court disposes of Defendant's argument that Plaintiff erred in bringing her claims pursuant to 42 U.S.C. § 1983.

### I.     Standards Governing a Rule 12(b)(6) Motion to Dismiss

Fed. Civ. P. Rule 8(a)(2) requires a complaint to set out "a short and plain statement of the claim showing that the pleader is entitled to relief." To withstand a motion to dismiss, a complaint must contain sufficient allegations of fact, taken as true, "to state a claim for relief that is plausible on its face." *In Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 570 (2007). In applying this test, the Court accepts as true "all plausible, non-conclusory, and non-speculative" facts alleged in the complaint. *Shrader v. Al Biddinger*, 633 F.3d 1235, 1243 (10th Cir. 2011). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Accordingly, in ruling on a Rule 12(b)(6) motion, "a court should disregard all conclusory statements of law and consider whether the remaining specific factual allegations, if assumed to be true, plausibly suggest [that] the defendant is liable." *Collins*, 656 F.3d at 1214.

## II. Lawsuits Against Privately Operated State and Federal Correctional Facilities

### A. Section 1983

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). In our Tenth Circuit, it has been "long assumed" that private prisons operating under contract with the state to perform the "traditional state function" of operating a prison are state actors for purposes of § 1983. *Philips v. Tiona*, 508 Fed. Appx. 737, 750 (10th Cir. 2013). And in our district, it is "settled" that a private corporation that manages and operates a detention center is "considered a state actor for purposes of § 1983 . . . amenable to suit under that provision." *Herrera v. Cty. of Santa Fe*, 213 F.Supp.2d 1288, 1290 (D.N.M. 2002).

### B. *Bivens*

Because § 1983 pertains exclusively to wrongful acts committed by those acting under color of *state* law, a person seeking to redress a Constitutional violation caused by a *federal* actor must seek another course. In limited circumstances, *Bivens v. Six Unknown Named Agents of the Federal Bureau*, 403 U.S. 388 (1971), and its progeny provide such a course. *See id.* at 395-97 (holding that plaintiffs may sue federal officials in their individual capacities for damages for Fourth Amendment violations analogous to § 1983); *see Carlson v. Green*, 446 U.S. 14, 18 (1980) (recognizing a *Bivens*-type action for Eighth Amendment violations); *Davis v. Passman*, 442 U.S. 228, 230 (1979)

5

(extending *Bivens* to recognize an implied damages remedy under the Due Process Clause of the Fifth Amendment).  However, *Bivens* does not provide a cause of action against the United States, the Bureau of Prisons, or private corporations acting under color of federal law.  *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 71-72 (2001).  Thus, inmates of facilities that are operated by private corporations under contract with the Bureau of Prisons or other federal agencies may not state a *Bivens* claim against the corporation for alleged Constitutional violations.[2]  *Id.*; *Sarro v. Cornell Corr., Inc.*, 248 F.Supp.2d 52, 55, 61 (D.R.I. 2003) (holding that a detention facility operated pursuant to a contract between a private corporation and the U.S. Marshals Service was acting under color of federal law).

### C. Discussion

Defendant contends that Mr. Barela was arrested by the United States Marshals Service pursuant to a federal warrant, and that while he was in the Facility he was in the custody of the United States Marshals Service and the Bureau of Prisons.[3]  [Doc. 4 ¶¶ 1-2]  As such, Defendant argues that its actions—insofar as they pertained to Mr. Barela—were taken under color of federal law.  [Doc. 4 p. 4]  According to Defendant, because it was a "federal actor" as to Mr. Barela, § 1983 does not provide a cause of action to Plaintiff; and, Defendant argues, under *Malesko* it would be futile to permit Plaintiff to

---

[2] Inmates of privately operated federal facilities may seek alternative remedies for alleged constitutional violations, for example by relying on the tort law of the State in which the facility is located.  *Malesko*, 534 U.S. at 72-73.

[3] The circumstances of Mr. Barela's arrest and his status as a federal pre-trial detainee are not alleged in the *Complaint*.  However, Plaintiff does not challenge Defendant's factual representations in this regard, and for the purpose of considering Defendant's argument, the Court assumes that they are true.

amend the *Complaint* to assert a *Bivens*-type claim. [Doc. 4 p. 4-5] Based on this reasoning, Defendant argues that dismissal of Plaintiff's Constitutional claims is warranted. [Doc. 4 p. 4-5]

Defendant's argument is premised on its view that the issue of whether a private prison is a federal or a state actor is determined by the status of the inmate/would-be plaintiff seeking to remedy an alleged Constitutional violation. As authority for its position, Defendant cites several cases that stand for the well-established, yet irrelevant, proposition that federal prisoners held in privately-operated federal prisons cannot sue the prison under § 1983 or *Bivens*.[4] [Doc. 4 p. 4] These authorities neither address nor support Defendant's position.

Authorities that *are* relevant to the question whether a federal prisoner housed in a state or local, privately operated detention center run contrary to Defendant's position. For example, in *Logue v. United States*, 412 U.S. 521, 526 (1973), the Supreme Court rejected the notion that a county jail housing federal prisoners pursuant to a contract with the federal government is a "[f]ederal agency" or that its employees "are acting on behalf of the Bureau of Prisons or the [federal] [g]overnment in performing services for federal

---

[4] *Yassin v. Corrs. Corp. of Am.*, No. 11cv0421LAB, 2011 WL 4501403 at *3 (S.D. Cal. 2011) (discussing claims brought by federal detainee housed in a facility operated by a private corporation pursuant to a contract with the Department of Homeland Security); *Burke v. Corrs. Corp. of Am.*, No. 09-3068-SAC, 2009 WL 1631579 at *2 (D. Kan. 2009) (discussing claims brought by a federal inmate of a prison operated by a private corporation pursuant to a contract with the United States Marshals service); *Benson v. Corrs. Corp. of Am., No*. 4:08CV469, 2009 WL 2461016 at *2 (N.D. Ohio 2009) (discussing the claims of a prisoner who was indisputably detained in a facility operating "under color of Federal law"); *Sarro*, 248 F.Supp.2d at 55 (discussing claims brought by a federal inmate of a detention facility operated by a private corporation pursuant to a contract with the U.S. Marshals Service).

prisoners." Thus, the *Logue* Court held, the federal government is not liable for wrongful acts committed by county jail employees against federal prisoners housed in the county jail. *Id.* at 532. Later, in *Henderson v. Thrower*, 497 F.2d 125, 126 (5th Cir. 1974) the Fifth Circuit cited *Logue* to support its holding that a city jail in Alabama that temporarily housed a federal prisoner pursuant to a federal contract could not escape liability under § 1983 in a lawsuit filed by that prisoner. The *Henderson* Court explained that the question of liability is determined not by the particular circumstances that brought the plaintiff into the facility, but by the fact that the authority to operate a jail was ultimately conferred by the State of Alabama. *Id.* at 125-26.

More recently, a court in the Western District of Texas—considering an argument almost identical to the one made by Defendant—held that a jail operated by a private corporation pursuant to a contract with a Texas county was a state actor for purposes of a § 1983 claim brought by a federal prisoner. *See Alvarez v. Geo Group, Inc.*, No. SA-09-CV-0299, 2010 WL 743752 at * 2 (W.D. Tex. 2010) ("The Geo Group maintains that it cannot be sued under [§] 1983 because it acted under color of federal law rather than under color of state law . . . . because Alvarez was a federal prisoner."). The *Alvarez* court explained,

> [t]he County contracted with The Geo Group to perform a function traditionally the exclusive providence of the state—confinement of prisoners—specifically for the operation of the jail. The County then entered into an agreement with the U.S. Marshals Service for the custody, care, safekeeping and medical care of federal prisoners. As a prisoner, Alvarez was a third-party beneficiary of both sets of contracts. The County's agreement with the U.S. Marshals Service did not change the character of The Geo Group's function. Because The Geo Group acted pursuant to its contract with the County, it acted in performance of a

> function traditionally the exclusive [provenance] of the state, and thus acted as a state actor.

*Id.*

Defendant operates the Facility pursuant to a contract with the State of New Mexico. [Doc. 1-1 ¶ 8] By operating the Facility Defendant is performing a traditional state function, and is considered a state actor for purposes of § 1983. *Philips*, 508 Fed. Appx. at 750; *Herrera*, 213 F.Supp.2d at 1290. Mr. Barela's status as a federal pre-trial detainee did not transform the Facility into a *de facto* federal agency immune from liability under § 1983. *Alvarez*, 2010 WL 743752 at * 2; *see Logue*, 412 U.S. at 526; *Henderson*, 497 F.2d at 126. Defendant's arguments to the contrary do not support dismissal of Plaintiff's constitutional claims.

### III. Whether the Allegations in the Complaint State a Plausible § 1983 Claim

#### A. The Law Governing § 1983 Claims Arising From Inmate Suicide

In general, "[c]laims arising from a failure to prevent prisoner suicide are considered and treated as claims based on the failure of jail officials to provide medical care for those in their custody." *Gaston v. Ploeger*, 229 Fed.Appx. 702, 709-10 (10th Cir. 2007). However, "[a] municipality may not be held liable under § 1983 solely because its employees inflicted injury on the plaintiff[]."[5] *duBois v. Payne Cty. Bd. of Cty. Commr's*,

---

[5] In the context of § 1983, private entities acting under color of state law—such as Defendant, are treated as municipalities. *Smedley v. Corr. Corp. of Am.*, 175 Fed.Appx. 943, 946 (10th Cir. 2005). As such, they "cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't of Social Servs. of City of N.Y.*, 436 U.S. 658, 690 (1978).

543 Fed.Appx. 841, 848 (10th Cir. 2013).  Rather, "[i]t may only be held liable under § 1983 for its own unconstitutional or illegal policies." *Id.* at 849.  "A plaintiff must therefore identify the [municipality's] policy or custom that caused the injury" and "show that the policy was enacted or maintained with deliberate indifference to an almost inevitable constitutional injury." *Id.* at 848.

In the context of a § 1983 claim against a county jail arising from an inmate's suicide, our Tenth Circuit stated the deliberate indifference standard as follows:

> deliberate indifference in the municipal liability context is an objective standard that may be satisfied when the municipality has actual or constructive notice that its action or failure is substantially certain to result in a constitutional violation, and it consciously and deliberately chooses to disregard the risk of harm.  Although a single incident generally will not give rise to liability, deliberate indifference may be found absent a pattern of unconstitutional behavior if a violation of federal rights is a 'highly predictable' or 'plainly obvious' consequence of a municipality's action.  The official position must operate as the moving force behind the violation, and the plaintiff must demonstrate a direct causal link between the action and the right violation.

*duBois*, 543 Fed.Appx. at 849.

Further, in regard to the "official policy" requirement, our Tenth Circuit explained that

> [t]he official policy requirement was intended to distinguish acts of the *municipality* from acts of the *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.  A challenged practice may be deemed an official policy or custom for § 1983 municipal-liability purposes if it is a formally promulgated policy, a well-settled custom or practice, a final decision by a municipal policymaker, or deliberately indifferent training or supervision.

*Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 770 (10th Cir. 2013) (citation omitted).

With this legal framework in mind, the Court turns to the allegations in the *Complaint*.[6]

### B. Plaintiff's Factual Allegations Regarding Defendant's Policies and Customs[7]

As shown in the preceding paragraphs, a plaintiff suing a municipality under § 1983 is required to (1) identify a municipality's unlawful policy or custom; (2) show that the policy was the cause of, or moving force behind, the allege constitutional deprivation; and (3) show that the municipality had actual or constructive notice that its policy or custom was substantially certain to result in a constitutional violation. *duBois*, 543 Fed.Appx. at 848; *Schneider*, 717 F.3d at 770.

---

[6] In an exercise of discretion, the Court does not consider materials outside of the pleadings in ruling upon Defendant's *Motion to Dismiss*; the Motion is not converted into one for summary judgment. *Lowe v. Town of Fairland*, 143 F.3d 1378, 1381 ("[C]ourts have broad discretion in determining whether . . . to accept materials beyond the pleadings, thereby converting a motion to dismiss into a motion for summary judgment.).

[7] The Court does not consider the allegations that pertain exclusively to the now-dismissed defendant Corizon Health Corporation. [Doc. 1-1 ¶¶ 51-60]  Nor does the Court consider the ineffectual allegations pertaining exclusively to what Defendant's employees knew or did that support Plaintiff's *respondeat superior* theory of liability. [Doc. 1-1 ¶¶ 45-49]   *See Monell*, 436 U.S. at 690 (stating that a municipality cannot be held liable under a *respondeat superior* theory); *Smedley*, 175 Fed.Appx. at 946 (stating that *Monell* applies to private entities acting under color of state law).

As to the first of these requirements, "[t]he plaintiff cannot simply allege that there is a policy in place." *See Griego v. City of Albuquerque*, 100 F.Supp.3d 1192, 1213 (D.N.M. 2015); *see Strauss v. City of Chi.*, 760 F.2d 765, 767 (7th Cir. 1985) ("A complaint that tracks *Monell*'s requirement of official policy with bare allegations cannot stand."). A mere conclusory allegation that a policy exists is treated as a legal conclusion, and is not taken at face value. *See Griego*, 100 F.Supp.3d at 1213. Instead, a plaintiff alleging the existence of an unconstitutional policy must support the allegation by pleading facts "that, if true, would give rise to a plausible inference that such a policy exists." *Griego*, 100 F.Supp.3d at 1213.

Where the at-issue policy is a formal or written directive, the plaintiff may satisfy this pleading requirement by alleging what the policy is and where it is codified. *Griego*, 100 F.Supp.3d at 1213. Where the policy is informal—for example, a policy that is reflected only in "a well-settled custom or practice," the alleged policy must be supported by additional factual allegations. *Id.* at 1215-16 (stating that at the pleading stage, an informal policy may be shown to exist by alleging that there have been several prior occurrences of the at-issue constitutional deprivation, attestations by municipal employees that such a policy exists, or other evidence).

In the present case, Plaintiff's allegations regarding Defendant's unlawful policies and customs fall into three categories: security, staffing, and training and supervision. As to each of these alleged policies, Plaintiff provides a mere

12

conclusory statement alleging the existence of an unlawful policy without additional facts from which a plausible inference may be drawn that such a policy exists.

In regard to security, Plaintiff alleges that Defendant had "a custom or policy of failure to provide adequate security to prevent drug trafficking into prison facilities, failure to screen drug use and failure to find drugs within a prison facility[.]" [Doc. 1-1 ¶ 34] However, aside from the fact that Mr. Barela had both secreted and ingested drugs at some point—it is not alleged that he did so after he was confined to the Facility—the *Complaint* is devoid of any allegation from which it could reasonably be inferred that Defendant, in fact, had such a policy in place.

Similarly, in regard to staffing, Plaintiff alleges that Defendant "had a policy of under-staffing and of permitting employees who were working additional overtime shifts to leave early[.]" [Doc. 1-1 ¶ 35] According to Plaintiff, these policies were unconstitutional "because they created a substantial risk of danger, including the risk of drug use[,]" and the risk that detainees would receive inadequate medical and psychiatric care. [Id.] Assuming without deciding that a policy of under-staffing and permitting overtime employees is unconstitutional, the *Complaint* is devoid of any alleged facts that support the conclusory assertion that Defendant, in fact, had such a policy. Without specific factual allegations showing why the Plaintiff believes such a policy prevailed, the allegation amounts to an unadorned legal conclusion that, in the context of Defendant's *Motion to*

13

*Dismiss*, must be disregarded.  *Ashcroft*, 556 U.S. at 679 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."); *Griego*, 100 F.Supp.3d at 1213 (stating that conclusory allegations regarding the existence of a municipal policy are treated as legal conclusions).

Plaintiff also alleges that Defendant evinced deliberate indifference by failing to train and supervise its employees "in how to respond to required psychiatric care."  [Doc. 1-1 ¶¶ 36-37]  In this regard, the *Complaint* contains several allegations about what Defendant's employees should have done, but failed to do, in regard to Mr. Barela's care.  For example, Plaintiff alleges that the nurse who administered Mr. Barela's pre-segregation health evaluation failed to complete the form, possibly failed to complete the evaluation at all, and left blank the "psychiatric" portion of the form.  [Doc. 1-1 ¶ 13]  Plaintiff also alleges that Mr. Barela should have been screened for suicidal ideation and placed on suicide watch after he was observed acting irrationally and hallucinating.  [Doc. 1-1 ¶¶ 15, 29]  And, more generally, Plaintiff alleges that Defendant and its employees failed to "comply with standards policies and procedures" that apply to someone in Mr. Barela's observed condition.  [Doc. 1-1 ¶ 23]

While these and other allegations may be relevant to a claim that Defendant's employees negligently performed their duties, they say nothing about Defendant's training or supervision policy. A showing of negligence or error on the part of an employee does not suffice to state a claim against a municipal entity

14

for failure to train. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 391 (1989) ("[A]dequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the city liable.").

In summary, to state a § 1983 claim against Defendant, Plaintiff was required to allege facts demonstrating, among other things, the existence of unlawful policies as a direct cause of Plaintiff's suicide. *duBois*, 543 at 848. The conclusory and undeveloped allegations in the *Complaint* relevant to Defendant's policies are inadequate to demonstrate the existence of the alleged unlawful policies. As such, Plaintiff's Constitutional claims against Defendant shall be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

### IV.   Plaintiff's State Law Claims

Having determined that Plaintiff's § 1983 claims against Defendant shall be dismissed, the only remaining claims are those brought pursuant to state law. The Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims. *Estate of Harshman v. Jackson Hole Mountain Resort Corp.*, 379 F.3d 1161, 1165-66 (recognizing this Court's discretion to exercise supplemental jurisdiction over state law claims that were brought pendent to federal law claims that have been dismissed). Accordingly, the Court will remand this case to the Second Judicial District, County of Bernalillo, for disposition of plaintiff's remaining claims.

**CONCLUSION**

**WHEREFORE, IT IS HEREBY ORDERED** that *Defendant Corrections Corporation of America's Motion to Dismiss* filed December 16, 2015 [Doc. 4] is **Granted** as to Plaintiff's Section 1983 claims.

**IT IS FURTHER ORDERED** that this case is remanded to the Second Judicial District Court, County of Bernalillo, State of New Mexico for the disposition of Plaintiff's remaining claims.

**IT IS SO ORDERED** this 16th day of August, 2016 in Albuquerque, New Mexico.

_____
**M. CHRISTINA ARMIJO**
**Chief United States District Judge**